CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
September 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| A.S.C., by his Mother, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-00072 |
| | ) | |
| Warren County School Board *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendants Warren County School Board, Robert Johnston, and Samantha St. Clair's motion to dismiss Plaintiff A.S.C.'s first amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 32). For the reasons that follow, the court will **GRANT in part** and **DENY in part** the motion.

## I.    Background

The underlying facts are set out in more detail in this court's March 5, 2025 memorandum opinion resolving Defendants' motion to dismiss the original complaint. (*See* Mem. Op. (Dkt. 28).) The court does not restate them all here. At the time of the events that led to this lawsuit, A.S.C. was a student at Skyline Middle School in Warren County. (Am. Compl. ¶¶ 1, 8 (Dkt. 31).) On August 24, 2023, A.S.C. was punched by another student, R.S., during a physical education class. (*Id.* ¶¶ 8, 20.) R.S. was significantly larger than A.S.C., and he caused substantial injuries to A.S.C.'s mouth and jaw. (*Id.* ¶¶ 20, 67.) Samantha St. Clair, who worked as a student support coach at the school, was standing a few feet away from R.S.

and A.S.C. shortly before the altercation. (*Id.* ¶¶ 5, 24–25.) She "observed [A.S.C.] get pushed several times" by R.S. and then "chose to ignore the initial physical attack" and "walked away" before R.S. punched A.S.C. (*Id.* ¶ 25.) Robert Johnston was the principal of Skyline Middle School at the time. (*Id.* ¶ 4.)

A.S.C., by his mother as next friend, brought this action on September 26, 2024. (*See* Compl. (Dkt. 1).) His original complaint alleged claims against the School Board under 42 U.S.C. § 1983 for substantive due process violations. (*Id.* ¶¶ 81–97.) It also alleged claims for gross negligence against Johnston, St. Clair, and a school nurse named Cynthia Day. (*Id.* ¶¶ 98–113.)

Defendants moved to dismiss the original complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 9.) On March 5, 2025, the court granted their motion to dismiss in part and denied in part. (Dkt. 29.) It dismissed the substantive due process claims, which alleged that the School Board had violated his right to bodily integrity and his property interest in an education by failing to protect him from R.S. (Mem. Op. at 8–15.) The court concluded that A.S.C. failed to state a substantive due process claim based on a "state-created danger" theory because he did not plausibly allege that the School Board had taken affirmative acts that created or increased the risk that R.S. would attack A.S.C., as required by Fourth Circuit precedent. (*Id.*) In his opposition brief, A.S.C. had attempted to raise an additional substantive due process claim based on a theory of supervisory liability. (*See id.* at 15.) The court declined to consider that claim because it did not appear in the complaint. (*Id.*)

Next, the court held that the complaint failed to state a gross negligence claim against Johnston or Day because the alleged facts did not support a reasonable inference that they

had failed to act with even slight care in responding to A.S.C.'s injuries. (*Id.* at 15–19, 21–24.) However, the court determined that the alleged facts stated a plausible gross negligence claim against St. Clair. (*Id.* at 20–21.)

The court granted A.S.C. leave to amend. (*Id.* at 24.) A.S.C. filed a first amended complaint on March 26, 2025. The first amended complaint removes Day as a defendant[1] and alleges four causes of action. Counts 1 and 2 both allege § 1983 substantive due process claims against the School Board based on supervisory liability. (Am. Compl. ¶¶ 80–95.) They assert that the School Board was aware Johnston had allowed R.S., a student known to pose a physical risk to other students, to be placed in a classroom setting with other students, and responded to the situation with deliberate indifference to or tacit authorization of the risk that A.S.C.'s constitutional rights would be violated. (*See id.*) Count 1 alleges that the School Board's failure to supervise violated his Fourteenth Amendment right to bodily integrity, while Count 2 alleges that the same lack of supervision deprived A.S.C. of his property interest in a public education. (*See id.*) Count 3 alleges a similar supervisory liability claim against Johnston. (*Id.* ¶¶ 96–102.) Lastly, Count 4 alleges the gross negligence claim against St. Clair. (*Id.* ¶¶ 103–07.) A.S.C. requests both compensatory and punitive damages. (*Id.* at 17.)

On April 8, 2025, Defendants moved to dismiss the first amended complaint with prejudice under Rule 12(b)(6). (Mot. to Dismiss (Dkt. 32); Defs.' Mem. (Dkt. 33).) A.S.C.

---

[1] The first amended complaint does not identify Day as one of the parties to the action and does not allege any causes of action against her. (*See* Am. Compl. ¶¶ 1–5.) However, some of the factual allegations continue to refer to her as "Defendant Day." (*Id.* ¶¶ 27–33, 40, 47.) As Defendants note, those references appear to be accidental remnants of the original complaint. (*See* Defs.' Mem. at 1 n.1.) In his opposition brief, A.S.C. does not suggest that he intends to continue pursuing any claims against Day.

filed a response opposing the motion to dismiss, (Pl.'s Opp'n (Dkt. 36)), and Defendants filed

a reply, (Defs.' Reply (Dkt. 37)).

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  It does not "resolve contests

surrounding the facts or the merits of a claim." *Doriety for Estate of Crenshaw v. Sletten*, 109 F.4th

670, 679 (4th Cir. 2024) (internal quotation marks omitted).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Id.*  When reviewing a Rule 12(b)(6) motion to dismiss, the court

must "accept as true all well-pleaded facts in a complaint and construe them in the light most

favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir.

2017).

## III.    Analysis

### A. Substantive Due Process Claims Based on Supervisory Liability (Counts 1, 2, and 3)

Counts 1 and 2 allege § 1983 claims for violations of A.S.C.'s substantive due process

rights.  (*See* Am. Compl. ¶¶ 80–95.)  The allegations make clear that the two counts, like Count

3, rely on a theory of supervisory liability.  A.S.C.'s opposition brief confirms that point.  (*See*

Pl.'s Opp'n at 9–13.)

In limited circumstances, state officials may be held liable under § 1983 "for the constitutional injuries inflicted by their subordinates." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). Supervisory liability "is not premised on respondeat superior but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citation omitted); *see also Younger v. Crowder*, 79 F.4th 373, 381 n.12 (4th Cir. 2023) (explaining that the term "supervisory liability" is "a misnomer" because liability under § 1983 is limited to a state official's own misconduct).

To that end, a plaintiff who alleges a § 1983 claim based on supervisory liability must prove three elements: (1) "that the supervisor had actual or constructive knowledge that her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (cleaned up); *see Shaw*, 13 F.3d at 799.

Counts 1 and 2 allege that the School Board "had actual or constructive knowledge that Defendant Johnston, as principal of Skyline, allowed R.S., . . . a student known to have a history of physical altercations with other students, to be placed in general education settings[,] creating a pervasive and unreasonable risk that it would violate [A.S.C.'s] constitutional rights." (Am. Compl. ¶¶ 83, 91.) They assert that the School Board's response to that knowledge "was

so inadequate as to show deliberate indifference or tacit authorization of the risk that a violation of [A.S.C.'s constitutional rights] would follow," and that R.S. injured A.S.C. as a direct and proximate result of the School Board's inadequate response. (*Id.* ¶¶ 84–85, 92–93.) Count 3 then alleges that Johnston knew *his* subordinates had placed a dangerous student in a classroom setting without safety measures, and that Johnston's failure to respond to that knowledge constituted deliberate indifference to or tacit authorization of the risk of constitutional injury to A.S.C. (*Id.* ¶¶ 98–99.)

Defendants argue that Counts 1, 2, and 3 all fail because the facts alleged do not suggest that A.S.C. suffered any constitutional injury. (*See* Defs.' Mem. at 7–8.) The court agrees. "It is well settled that there can be no supervisory liability when there is no underlying violation of the Constitution." *Phillips v. Bailey*, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004) (collecting cases); *see also Truman v. Shrader*, No. 7:22-cv-00570, 2024 WL 1261210, at *8 n.3 (W.D. Va. Mar. 25, 2024) (recognizing the same rule); *Doe v. Rosa*, Civil Action No. 2:14-4396, 2016 WL 7496162, at *4 (D.S.C. Feb. 8, 2016) ("In the absence of unconstitutional conduct by a subordinate, there can be no supervisory liability claim.").

A.S.C. does not plausibly allege that any underlying violation of his substantive due process rights occurred here. To establish a substantive due process violation, he must show that a *state actor* deprived him of a constitutionally protected interest. *See Callahan v. N.C. Dep't of Pub. Safety*, 18 F.4th 142, 145 (4th Cir. 2021). To make that showing, A.S.C. must demonstrate that some school employee or official engaged in affirmative acts that directly created or increased the risk he would suffer injury at the hands of R.S. *Id.* at 146. Otherwise,

the "failure to protect [him] against private violence" does not violate substantive due process. *Id.* (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)).

This court dismissed the substantive due process claims in A.S.C.'s original complaint because the complaint did not plead facts showing that any school employee took any affirmative acts that created or increased the risk that R.S. would physically injure A.S.C. (Mem. Op. at 9–15.)  The first amended complaint does not allege any new facts that call that decision into question.   Because A.S.C. has not sufficiently pled that a violation of his substantive due process rights occurred, he fails to state a claim for supervisory liability.  *See Phillips*, 337 F. Supp. 2d at 807.  To the extent that A.S.C. also intends to allege that the School Board or Johnston should be liable for failing to train school employees, the lack of a constitutional violation also defeats that claim.  *See Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised.").

As A.S.C. has not plausibly alleged a substantive due process claim based on a supervisory liability theory, the court will grant Defendants' motion to dismiss Counts 1, 2, and 3.[2]  The court is persuaded that further amendment to those claims would be futile, so it will dismiss Counts 1, 2, and 3 with prejudice.

---

[2] Because Counts 1, 2, and 3 fail for this reason, the court need not address Defendants' alternative arguments for dismissal, which contend that the Fourteenth Amendment does not guarantee a right to a public education, that there is no basis for imposing municipal liability on the School Board, and that Johnston is entitled to qualified immunity.  (*See* Defs.' Mem. at 9–16.)

### B. Gross Negligence Claim Against St. Clair (Count 4)

Count 4 alleges a gross negligence claim against St. Clair, the student support coach, in both her official and individual capacities. Defendants move to dismiss both parts of the claim. They first argue that the official-capacity claim is barred by sovereign immunity. (Defs.' Mem. at 16–17.) Under Virginia law, "a suit against a government employee in his or her official capacity is functionally a suit against the government entity that the employee works for." *Drasovean v. Walts*, 917 S.E.2d 518, 521 (Va. Ct. App. 2025). Thus, a government employee sued in her official capacity "enjoys whatever immunity the sovereign may be entitled to claim." *Hinchey v. Ogden*, 307 S.E.2d 891, 893 (Va. 1983). Because A.S.C.'s claim against St. Clair in her official capacity "amount[s] to a suit against the School Board itself," the question is whether the School Board would be immune from liability for gross negligence. *Drasovean*, 917 S.E.2d at 520.

It would. The Supreme Court of Virginia has held that a school board, as an agent or instrumentality of the Commonwealth, enjoys the Commonwealth's sovereign immunity from tort liability. *Id.*; *see Newport News Sch. Bd. v. Z.M.*, 915 S.E.2d 56, 57 (Va. 2025) ("School boards are covered by sovereign immunity."); *Maddox v. Commonwealth*, 594 S.E.2d 567, 571 (Va. 2004) (quoting *Kellam v. Sch. Bd. of City of Norfolk*, 117 S.E.2d 96, 100 (Va. 1960)) ("[A] school board is an agent or instrumentality of the state, not a true municipality, and therefore 'partakes of the state's sovereignty with respect to tort liability.'"). "Although government *employees* are not immune from claims of gross negligence, the School Board itself benefits from immunity from suit, whether the claims involve simple negligence, gross negligence, or even intentional torts." *Z.M.*, 915 S.E.2d at 59 (emphasis in original). Thus, while sovereign immunity does not

- 8 -

prevent A.S.C. from suing St. Clair for gross negligence in her individual capacity, it does bar his claim against St. Clair in her official capacity. The court will grant Defendants' motion to dismiss that portion of Count 4 with prejudice.

Defendants argue that A.S.C.'s gross negligence claim against St. Clair in her individual capacity fails because A.S.C. has not alleged facts showing that St. Clair owed him a duty of care or that she acted with gross negligence. (Defs.' Mem. at 17–21.) The court already has rejected Defendants' duty-of-care argument. (*See* Mem. Op. at 17, 20.) The Supreme Court of Virginia has recognized that principals "and other school officials" have a common-law duty to "supervise and ensure that students [can] have an education in an atmosphere conducive to learning, free of disruption, and threat to person." *Burns v. Gagnon*, 727 S.E.2d 634, 643 (Va. 2012) (internal quotation marks omitted); *see also Linnon v. Commonwealth*, 752 S.E.2d 822, 826 (Va. 2014) (same). At the same time, a school official is not an "insurer" of students' safety and may held liable only if she "failed to discharge [her] duties as a reasonably prudent person would under similar circumstances." *Burns*, 727 S.E.2d at 643 (internal quotation marks omitted). This court previously held that A.S.C.'s original complaint alleged that St. Clair exercised at least some supervisory authority in her role, so she owed A.S.C. a duty of supervision and care. (Mem. Op. at 20.) The same is true of the first amended complaint.

At this stage, A.S.C. has sufficiently alleged that St. Clair acted with gross negligence. The court reached the same conclusion when reviewing A.S.C.'s original complaint, (*see id.* at 20–21), and his first amended complaint includes the same factual allegations. In their renewed motion to dismiss this claim, Defendants ask the court to consider a video recording

of the incident, which they have submitted to the court via USB thumb drive. (*See* Defs.'
Mem. at 3 n.2.) They argue that the court may consider the video at the motion-to-dismiss
stage because it is "central to" the gross negligence claim and its authenticity is undisputed.
(*See id.*) Defendants do not ask the court to convert the proceedings into a motion for
summary judgment under Rule 12(d). (*See id.*)

Generally, a court reviewing a Rule 12(b)(6) motion to dismiss is "limited to considering
the sufficiency of allegations set forth in the complaint and the documents attached or
incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th
Cir. 2015) (internal quotation marks omitted). There are limited exceptions that rule, however.
A court may consider a document submitted by the movant that was not attached to the
complaint or incorporated by reference "so long as the document was integral to the complaint
and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159, 166 (4th Cir. 2016). "[I]f the plaintiff adopts the contents of an integral and
authentic document, a court can credit 'the document over conflicting allegations in the
complaint.'" *Doriety*, 109 F.4th at 679 (quoting *Goines*, 822 F.3d at 167).

In certain narrow circumstances, the court also may consider a video recording
submitted at the motion-to-dismiss stage. In *Doriety*, the Fourth Circuit held that a court may
take such a video into account "when (1) the video is 'integral' to the complaint and its
authenticity is not challenged, but (2) only to the extent that the video clearly depicts a set of
facts contrary to those alleged in the complaint, or blatantly contradicts the plaintiff's
allegations, rendering the plaintiff's allegations implausible." *Id.* at 679–80 (internal quotation
marks omitted). Establishing that a video "blatantly contradicts" the plaintiff's allegations is

"very difficult" and "requires that the plaintiff's version of events be utterly discredited by the video recording." *Id.* at 679 (cleaned up).

In his opposition brief, A.S.C. does not challenge the authenticity of the video or the court's ability to consider it when resolving the motion to dismiss. His brief does not mention the video at all. Even if the court assumes the video is integral to the first amended complaint, the video does not provide a basis for dismissal because it does not "clearly depict[] a set of facts contrary to" A.S.C.'s allegations or "blatantly contradict[]" them. *Id.* In at least some respects, the video footage is consistent with the facts A.S.C. alleges in the first amended complaint. (*See* Am. Compl. ¶ 25.) It shows that an adult, whom Defendants identify as St. Clair, was standing a few feet behind the students identified as A.S.C. and R.S. moments before the assault. The footage also clearly depicts R.S. pushing A.S.C. once while St. Clair stood nearby. It then shows St. Clair receiving a call and walking away a few seconds before R.S. punched A.S.C. To be sure, the video is not necessarily consistent with the factual allegations in all respects. Based on the footage, for instance, it appears that St. Clair may have observed R.S. push A.S.C. only once. Nonetheless, the court concludes that the video does not clear the "high bar" necessary to render A.S.C.'s allegations implausible at this stage of the proceedings. *Doriety*, 109 F.4th at 680. The court will not consider the video in resolving the motion to dismiss.

Accordingly, the court will deny the motion to dismiss the gross negligence claim against St. Clair in her individual capacity.

### IV.   Conclusion

For the reasons outlined above, Defendants' motion to dismiss the first amended complaint (Dkt. 32) will be **GRANTED in part** and **DENIED in part**.  The motion will be **GRANTED** as to Counts 1–3 and Count 4 to the extent it alleges a claim against St. Clair in her official capacity.  Those counts will be **DISMISSED with prejudice**.  The motion will be **DENIED** as to Count 4 to the extent it alleges a claim against St. Clair in her individual capacity.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this <u>30th</u>day of September, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE