CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 14, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| A.S.C., by his Mother, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:24-cv-00072 |
| ) | |
| Samantha St. Clair, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This matter is before the court on Plaintiff A.S.C.'s Motion for Reconsideration (Dkt. 62). For the following reasons, A.S.C.'s motion for reconsideration will be denied.

**I.      Background**

The underlying facts and procedural history are set out in detail in this court's previous memorandum opinions. (Dkt. 28); (Mem. Op. (Dkt. 58) (granting Defendants' motion to dismiss A.S.C.'s amended complaint).) The court will restate them here as relevant to the present motion.

At the time of the events that led to this lawsuit, A.S.C. was a student at Skyline Middle School in Warren County. (Am. Compl. ¶¶ 1, 8 (Dkt. 31).) On August 24, 2023, A.S.C. was punched by another student, R.S., during a physical education class. (*Id.* ¶¶ 8, 20.) R.S. was significantly larger than A.S.C., and his action caused substantial damage to A.S.C.'s mouth and jaw. (*Id.* ¶¶ 20, 67.) A.S.C., by his mother as next friend, brought this action on September 26, 2024. (Dkt. 1.) His original complaint alleged claims against the

School Board under 42 U.S.C. § 1983 for substantive due process violations. (*Id.* ¶¶ 81–97.) It also alleged claims for gross negligence against several school employees. (*Id.* ¶¶ 98–113.)

On March 5, 2025, the court granted in part and denied in part Defendants' motion to dismiss the original complaint, granting A.S.C leave to amend. (Dkt. 29.) A.S.C. filed his amended complaint on March 26, 2025. (Am. Compl.) Count 1 of the amended complaint alleged that the School Board's failure to supervise violated his Fourteenth Amendment right to bodily integrity, while Count 2 alleged that the same lack of supervision deprived A.S.C. of his property interest in a public education. (*Id.* ¶¶ 80–95.) Count 3 alleged a similar supervisory liability claim against Robert Johnston, the school principal. (*Id.* ¶¶ 96–102.) Lastly, Count 4 alleged a gross negligence claim against Samantha St. Clair, a student support coach who witnessed part of A.S.C.'s altercation with R.S. and walked away before R.S. punched A.S.C. (*Id.* ¶¶ 103–07.)

On September 30, 2025, the court granted in part and denied in part Defendants' motion to dismiss the amended complaint with prejudice under Rule 12(b)(6). (Dkt. 59.) As relevant for the purposes of this motion, the court granted Defendants' motion to dismiss as to Counts 1, 2, and 3, finding that A.S.C. did not allege facts "suggest[ing] that A.S.C. suffered any constitutional injury" by a state actor—a prerequisite to supervisory liability. (Mem. Op. at 6.)

On October 28, 2025, A.S.C. filed the present motion, asserting that errors by the court and newly discovered evidence warrant reconsideration of the court's dismissal of Counts 1, 2, and 3 of the amended complaint. (Dkt. 62.)

## II. Standard of Review

### A. Motion for Reconsideration

The order A.S.C. challenges "did not resolve all claims against all parties," meaning the order "was interlocutory and thus subject to revision at any time" under Rule 54(b). *Saint Annes Dev. Co., Inc. v. Trabich*, 443 F. App'x 829, 832 (4th Cir. 2011) (citing Fed. R. Civ. P. 54(b)). "The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." *Id.* (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003)).

However, "the discretion Rule 54(b) provides is not limitless." *Carlson v. Bos. Scientific Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). The Fourth Circuit has noted that, in ruling on motions for reconsideration under Rule 54(b), courts "may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Id.* (quoting *Am. Canoe Ass'n*, 326 F.3d at 515).

Still other courts in the Fourth Circuit apply the Rule 59(e) standard for reviewing final orders when deciding Rule 54(b) motions. *See, e.g., Mamadou v. Cho,* No. 1:20-cv-146, 2020 WL 13750431, at *1 (E.D. Va. Dec. 23, 2020) ("[I]n assessing whether reconsideration is appropriate under Rule 54(b), the Court has also found instructive the grounds for reconsideration under Rule 59(e), which include whether (1) there has been an intervening change in controlling law; (2) there is new evidence not available earlier; or (3) there is a need to correct a clear error of law or to prevent manifest injustice.").

All in all, "reconsideration is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant." *Wootten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016).

### B. Supervisory Liability

In limited circumstances, state officials may be held liable under § 1983 "for the constitutional injuries inflicted by their subordinates." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). Supervisory liability "is not premised on respondeat superior but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citation omitted); *see also Younger v. Crowder*, 79 F.4th 373, 381 n.12 (4th Cir. 2023) (explaining that the term "supervisory liability" is "a misnomer" because liability under § 1983 is limited to a state official's own misconduct).

To that end, a plaintiff who alleges a § 1983 claim based on supervisory liability must prove three elements: (1) "that the supervisor had actual or constructive knowledge that her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (cleaned up); *see Shaw*, 13 F.3d at 799.

### III. Analysis

A.S.C.'s arguments for reconsideration can be divided into two categories: (1) that the court committed a "clear error" of law in dismissing Counts 1, 2, and 3 of the amended complaint, and (2) that "newly discovered evidence" warrants reconsideration. The court addresses each in turn.

#### A. "Clear Error"

As an initial matter, A.S.C. offers two paragraphs asserting that "even without more, he has pleaded facts to satisfy" his supervisory liability claims. (Pl.'s Mem. in Support of Mot. for Reconsideration (Dkt. 62-1) at 4-5.) By this, A.S.C. apparently means to argue that the court's previous adverse ruling was "clear error." *Mamadou*, 2020 WL 13750431, at *1.

But A.S.C.'s attempt "to put a finer point on his old arguments" does not demonstrate any error by the court. *See Shanklin v. Seals*, No. 3:07cv319, 2010 WL 1781016, at *3 (E.D. Va. May 3, 2010). The case A.S.C. offers as analogous to this one, *Lee v. Queen Anne's Cnty. Off. of Sheriff*, No. RDB–13–672, 2014 WL 476233 (D. Md. Feb. 5, 2014), is inapposite. *Lee* dealt with misconduct by state-employed deputies. *Lee*, 2014 WL 476233 at *9. But this court previously ruled that A.S.C.'s amended complaint failed to "show that a *state actor* deprived him of a constitutionally protected interest." (Mem. Op. at 6); *see also Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 30 (4th Cir. 2001) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)) ("The law is clear that 'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'"). *Lee* does not call that conclusion into question. Plaintiff's analogy to *Doe v. Nash Cnty. Bd. of Educ.*, No. 5:24-CV-259-D, 2025 WL

820671 (E.D.N.C. Mar. 13, 2025) fails for the same reason, (Pl.'s Mem. in Support of Mot. for Reconsideration at 14-15), as *Doe* dealt with misconduct by a state-employed teacher, *Doe*, 2025 WL 820671, at *1-2.

### B. "Newly Discovered Evidence"

A.S.C. asserts that newly discovered evidence gained during discovery warrants reconsideration of the court's previous order. But as St. Clair notes in opposition, (*see generally* Dkt. 65), several problems exist with A.S.C.'s argument. The court addresses each in turn.

1. <u>Discovery evidence may not be considered in the context of a 12(b)(6) motion to dismiss.</u>

St. Clair argues that A.S.C.'s motion for reconsideration is procedurally flawed, as it offers evidence not found in the amended complaint. (Dkt. 65 at 7-8.) The court's previous order granted a Rule 12(b)(6) motion to dismiss, where the court was limited to only those facts alleged in A.S.C.'s amended complaint. (*Id.*) Thus, St. Clair contends, the court may not consider evidence that A.S.C. has introduced for the first time in his motion for reconsideration. (*Id.* at 8.)

The court agrees. "A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021). "When reviewing a motion to dismiss, the Court may consider materials outside of the pleadings" only in certain specified instances. *See Frye v. Wilson*, No. 3:22cv536, 2023 WL 8455035, at *5 (E.D. Va. Dec. 6, 2023) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009)). But "Plaintiff[] ha[s] failed to demonstrate or explain how" the court can consider evidence offered in a motion for reconsideration, given

that the antecedent order was "confined to the pleadings." *Snyder v. Vill. of Luckey*, No. 3:22 CV 2282, 2024 WL 2882109, at *3 (N.D. Ohio June 7, 2024). Rule 12(b)(6)'s limitations ostensibly apply both when a court rules on a 12(b)(6) motion to dismiss and when it decides whether to reconsider that order.

Because A.S.C. "fail[s] to provide any authority that would allow this Court to review evidence outside of the Complaint in the context of a Motion to Dismiss," *cf. Frye* 2023 WL 8455035, at *5, it is unclear whether the court may consider A.S.C.'s offered evidence.

2. A.S.C.'s evidence is not newly discovered.

Even if the court could credit A.S.C.'s offered evidence, the court finds that this evidence is not "newly discovered" under Rule 59 (and, by extension, Rule 54(b), *see Mamadou*, 2020 WL 13750431, at *1).

The standard for relief based on newly discovered evidence under Rule 59 requires:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989). "Evidence that is available to a party prior to entry of judgment, therefore, is not a basis for granting a motion for reconsideration as a matter of law." *Id.* at 771-72.

The court dismissed Counts 1, 2, and 3 of A.S.C.'s amended complaint on September 30, 2025. (Dkt. 59.) But in opposition, St. Clair represents that "[a]ll depositions requested by A.S.C. were concluded by September 25, 2025." (Dkt. 65 at 4.) Thus, this evidence was apparently "available to [A.S.C.] prior to entry of judgment" by five days. *Boryan*, 884 F.2d at 771. A.S.C. "provided no explanation why [he] did not bring this newly discovered evidence to the Court's attention in a motion for leave to file a surreply before the Court issued a judgment." *Tawney v. AC & R Insulation Co.*, No. WDQ–13–1194, 2014 WL 3725926, at *2 (D. Md. July 24, 2014).

For this reason, the court finds A.S.C.'s evidence is not newly discovered as a matter of law.

3. <u>Plaintiff's evidence would not warrant reconsideration in any event.</u>

Even if A.S.C. had presented this evidence in a proper procedural posture and the evidence had been newly discovered, it still would not have merited reconsideration of the court's order. None of A.S.C.'s offered evidence would have established supervisory liability. The court addresses each piece of evidence in turn.

    i. *R.S.'s "documented" history of violence*

First, A.S.C. states he newly learned during discovery that R.S.'s violent tendencies had been "documented" in R.S.'s disciplinary record, leading R.S. to be placed on a Tier 2 list of students requiring additional support. (Pl.'s Mem. in Support of Mot. for

Reconsideration at 5); (*id.* at 6 ("Plaintiff discovered the evidence that Defendant Johnston knew how dangerous R.S. was only during the depositions of Johnston, Salins, and St. Clair.").) But A.S.C.'s amended complaint already alleged that Johnston and the School Board knew R.S. "to have a history of aggressive behavior and physical altercations with students and staff." (Am. Compl. at ¶¶ 61, 63.) A.S.C. does not explain how R.S.'s violent tendencies being "documented"—rather than "known" by Johnston and the School Board, (*id.*)—should change the court's previous analysis, which focused on A.S.C.'s failure to sufficiently allege an underlying violation of his substantive due process rights.

      ii.    *School official's failure to keep records*

Next, A.S.C. alleges that school officials "intentionally avoided documentation of any concerns or evidence brought to their attention," (Pl.'s Mem. in Support of Mot. for Reconsideration at 12), which "would have likely compelled action" by Johnston, (*id.* at 13). As the sole evidence of this, A.S.C. points to the fact that Assistant Superintendent George R. "Buck" Smith failed to remember details of R.S. and A.S.C.'s altercation in his deposition and did not take notes during several meetings. (*Id.* at 7-11).

This argument, too, suffers from several problems. First, A.S.C. only describes a failure to take notes by Smith and does not allege, beyond conclusory assertions, that this practice was "widespread, or at least [occurred] on several different occasions" amongst the School Board and Johnston's supervisees. *Wilkins*, 751 F.3d at 226. Second, even assuming that a failure to take notes or keep records of meetings was widespread, A.S.C. does not explain how Johnston or the School Board knew or had constructive knowledge of the practice among their supervisees. Finally, and perhaps most importantly, even assuming the

practice was widespread and known to Johnston and the School Board, A.S.C. does not describe how a failure to take notes in school meetings "posed a pervasive and unreasonable risk of constitutional injury" to A.S.C., *id.*, beyond speculation that it "would have likely compelled action" by Johnston, (Pl.'s Mem. in Support of Mot. for Reconsideration at 13).

      iii.    *Johnston and the School Board's "willful blindness"*

Next, A.S.C. argues that Johnston and the School Board "engaged in willful blindness in an effort to remain ignorant of the chaos at Skyline Middle School." (*Id.* at 12.) As evidence of this, A.S.C. points to a School Board member who expressed shock at hearing anecdotes of "a total lack of discipline at Skyline Middle School" and "fights and altercations that were taking place there." (*Id.* at 12-13.) By "willful blindness," A.S.C. appears to be arguing that Johnston and the School Board were "deliberately indifferent" to behavioral problems at the school under *Wilkins*.

However, even if A.S.C.'s evidence showed the existence of willful blindness, and even if this ostensible "willful blindness" could be attributed to the entire School Board, A.S.C. does not demonstrate how Johnston's or the School Board's putative willful blindness inflicted a "constitutional injury" to A.S.C. *Wilkins*, 751 F.3d at 226. At most, A.S.C. implicitly speculates that, absent this ostensible willful blindness, the school would have taken unspecified actions to prevent R.S. and A.S.C.'s altercation from occurring. But this is not enough to establish supervisory liability. *See id.* Nor would it constitute an "affirmative act[] that directly created or increased the risk [A.S.C.] would suffer injury at the hands of R.S." (Mem. Op. at 6); *cf. Callahan v. N. Carolina Dep't of Pub. Safety*, 18 F.4th 142, 148 (4th Cir. 2021) ("[I]naction can often be artfully recharacterized as 'action,' but we must resist the

temptation to inject this alternate framework into omission cases.") (internal quotations omitted).

## IV. Conclusion

For the foregoing reasons, the court will **DENY** A.S.C.'s motion for reconsideration.

An appropriate Order will issue.

**ENTERED** this 14th day of November, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE