CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
January 08, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| A.S.C., by his Mother, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 5:24-cv-00072 |
| Samantha St. Clair, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

Samantha St. Clair—a student support coach at Skyline Middle School—observed a middle-school student, R.S., push a classmate, A.S.C., during a physical education class. Seconds later, St. Clair was called to a meeting and walked towards the gymnasium exit. While St. Clair's back was turned, R.S. punched A.S.C. in the face, causing serious injury. A.S.C. argues St. Clair was grossly negligent for walking away after R.S. pushed him.

This matter is before the court on St. Clair's motion for summary judgment. (Dkt. 81.) While the court sympathizes with A.S.C. and his injury, no reasonable jury could find St. Clair liable for gross negligence. Accordingly, the court will grant St. Clair's motion for summary judgment.

**I.     Background**

**A. Factual History**

The following material facts are taken from the summary judgment record and, unless otherwise stated, are undisputed.

1. The Parties

At the time of the events that led to this lawsuit, Plaintiff A.S.C. was a student at Skyline Middle School in Warren County, Virginia. (Dep. of A.S.C., Aug. 6, 2025, at 12:9–15 (Dkt. 82-1) [hereinafter "A.S.C. Dep."].) The incident giving rise to this suit occurred during the second week of A.S.C.'s seventh-grade year. (*Id.* at 12:13–15; Dep. of Virginia Cram, Aug. 5, 2025, at 61:8–9 (Dkt. 82-2) [hereinafter "Cram Dep."].) Prior to that date, A.S.C. had never met, spoken with, or had a conflict with R.S. (A.S.C. Dep. at 36:19–37:8.)

Defendant Samantha St. Clair was employed as a student support coach by Warren County School Board and assigned to Skyline Middle School during the 2023–2024 school year. (St. Clair's Answers to Pl.'s Interrogatories (Dkt. 82-4) at 1–2.) St. Clair's primary responsibility was to assist students with behavioral challenges. (*Id.* at 3). When a student exhibited behavioral issues, St. Clair or another student support coach would be called to "respond, assess the situation, offer support and assistance . . . or identify the appropriate resource for the student." (*Id.* at 3.) St. Clair received Mandt training, a form of "behavioral crisis interaction training," in which she learned how to recognize "potentially violent behavior and intervene proactively through de-escalation techniques." (*Id.* at 5.) In addition to this "primary role," St. Clair also "monitored the hallways and bathrooms." (*Id.* at 3.)

2. The Incident on August 24, 2023

On the afternoon of August 24, 2023, A.S.C. was participating in a physical education class. (Dkt. 82-3 at 4.) Teacher Kayla Hodgson was supervising the class in a game of wiffle ball. (Cram Dep. at 37:19; Dep. of Samantha St. Clair, Sept. 25, 2025, at 36:11–13 (Dkt. 82-5)

[hereinafter "St. Clair Dep."].)  Two other physical education teachers were also present.  (St. Clair Dep. at 35:1–7.)

At this time, St. Clair was present in the gymnasium.  (St. Clair's Answers to Pl.'s Interrogatories at 5.)  St. Clair had entered the gym that day without being called there and had "no assigned task."  (*Id.*)  She stated that she was "simply passing by" and "decided to stop in to see what game the students were playing."  (Def.'s Mem. in Support of Mot. for Summary Judgment at 5 (Dkt. 82) [hereinafter "Def.'s Mem. in Support"]; St. Clair Dep. at 34:10–18.)  St. Clair stood at the edge of the gymnasium floor, near where a crowd of students were lining up for wiffle ball.  (Gymnasium Video at 00:01–00:24 [hereinafter "Video"].)

While in line, R.S. forcefully pushed A.S.C.  (Video at 00:24.)  St. Clair observed this push, though the circumstances of her observation are disputed.  St. Clair stated that she was looking away from the boys and only saw the push "momentarily, out of the corner of her eye."  (Def.'s Mem. in Support at 2; *see* St. Clair's Answers to Pl.'s Interrogatories at 7.)  In contrast, A.S.C. argues that the video shows St. Clair directly facing the boys.  (Pl.'s Mem. in Opp. to Def.'s Mot. at 5 (Dkt. 84) [hereinafter "Pl.'s Resp."].)

After the push, the interaction between A.S.C. and R.S. "stopped or returned to 'baseline.'"  (St. Clair's Answers to Pl.'s Interrogatories at 7.)  St. Clair saw no further interaction between them.  (*Id.*)  St. Clair believed the interaction (*i.e.,* the push) between the students did not require a further response from her because she was not supervising the students and "it was a brief interaction . . . which resolved itself."  (*Id.*)  St. Clair stated that she did not notice physical differences between A.S.C. and R.S.  (St. Clair Dep. at 38:20–39:4.)

- 3 -

Around six seconds after the push, St. Clair received a call on her walkie-talkie instructing her to proceed to a special education meeting. (Video at 00:30; St. Clair Dep. at 41:13–15; St. Clair's Answers to Pl.'s Interrogatories at 6.) St. Clair had been required to attend that meeting but had "lost track of time." (St. Clair's Answers to Pl.'s Interrogatories at 6.) St. Clair began walking out of the gymnasium. (Video at 00:33.) St. Clair took one small step in one direction but proceeded to the gymnasium door in the opposite direction. (*Id.*)

Approximately ten seconds after St. Clair walked away, while her back was to the students, A.S.C. and R.S. briefly resumed pushing one another. (*Id.* at 00:39.) R.S. then punched A.S.C. in the face. (*Id.* at 00:41.)

### 3. St. Clair's Prior Knowledge of R.S.

About a week earlier, St. Clair had been called to assist with a student who would not follow instructions or log off his Chromebook. (St. Clair's Answers to Pl.'s Interrogatories at 5.) This student was R.S., although St. Clair contends that he was not pointed out to her when she arrived at the classroom.[1] (*Id.* at 5–6.) After learning that this unnamed student had previously thrown his Chromebook across the room, St. Clair asked for an administrator to handle the situation, as St. Clair was "far into [her] pregnancy" at the time. (*Id.*) Despite this episode, St. Clair states that she had "no familiarity with R.S. prior to" August 24 and did not know what R.S. looked like.[2] (Def.'s Mem. in Support at 5; St. Clair's Answers to Pl.'s Interrogatories at 5–6; St. Clair Dep. at 29:13–14.)

---

[1] Plaintiff contests this fact, (Pl.'s Resp. at 4), which will be discussed in more detail below.
[2] Plaintiff also contests this fact, (Pl.'s Resp. at 4), which will be discussed in more detail below.

**B. Procedural History**

A.S.C., by his mother as next friend, brought this action on September 26, 2024. (Dkt. 1.) His original complaint alleged claims against the Warren County School Board under 42 U.S.C. § 1983 for substantive due process violations. (*Id.* ¶¶ 81–97.) It also alleged claims for gross negligence against St. Clair and several other school employees. (*Id.* ¶¶ 98–113.)

On March 5, 2025, the court granted in part and denied in part Defendants' motion to dismiss the original complaint, granting A.S.C. leave to amend. (Dkt. 29.) A.S.C. filed his amended complaint on March 26, 2025. (Dkt. 31.) The defendants filed a motion to dismiss all claims. (Dkt. 32.) On September 30, 2025, the court granted in part and denied in part defendants' motion to dismiss the amended complaint with prejudice under Rule 12(b)(6). (Dkt. 59.) Only A.S.C.'s gross negligence claim against St. Clair survived, over which the court retained supplemental jurisdiction. (*Id.*); 28 U.S. Code § 1367; *see Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir. 1995) ("[F]ederal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away.").

Following discovery, St. Clair moved for summary judgment on the remaining gross negligence claim. (Dkt. 81.)

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is a fact that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Additionally, a dispute is "genuine" if "a reasonable jury could return

a verdict for the non-moving party." *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022). Accordingly, the court should only grant summary judgment if "no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990); *see also Anderson*, 477 U.S. at 250 (explaining that courts must grant summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict").

When ruling on a motion for summary judgment, the court considers "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact. *Id.* at 323. "Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

When determining whether a genuine issue of material fact exists, the court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Id.* (quoting *Anderson*, 477 U.S. at 252). A nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

### III.     Analysis

"Actionable negligence requires that there must be a legal duty, a breach thereof and a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence . . . ."  *RGR, LLC v. Settle*, 764 S.E.2d 8, 20 (Va. 2014) (cleaned up).  St. Clair contends that A.S.C. has not created a triable issue as to each one of these prongs.  First, St. Clair contends that she owed no duty to A.S.C.  (Def.'s Mem. in Support at 8–11.)  Second, St. Clair asserts that A.S.C.'s injury at the hands of third-party assaultive conduct was not reasonably foreseeable.  (*Id.* at 11–12.)  Third, St. Clair rejects that she engaged in a "degree of egregious conduct" necessary to find breach under gross negligence.  (*Id.* at 12 (quoting *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987)).)

The court will examine each argument in turn.

#### A. Duty

"The issue whether a legal duty in tort exists is a pure question of law."  *Kellermann v. McDonough*, 684 S.E.2d 786, 790 (Va. 2009).  The court begins by ascertaining whether St. Clair owed a duty to supervise A.S.C. with reasonable care.

The cases governing this issue are *Kellermann v. McDonough* and *Burns v. Gagnon*, 727 S.E.2d 634 (Va. 2012).  These cases held that when an adult "agrees to supervise and care for [a] child" whom a parent has relinquished to their care, such an adult has a common-law duty to do so "with reasonable care."  *Burns*, 727 S.E.2d at 643 (quoting *Kellerman*, 684 S.E.2d at 790).  In *Burns*, the Supreme Court of Virginia held that a school vice principal had a duty of reasonable care towards a student, as the vice principal had supervisory authority over the student by nature of his job.  *Id.* (noting that it was the responsibility of the vice principal and

"other school officials to supervise and ensure that students could . . . have an education in an atmosphere conducive to learning, free of disruption, and threat to person") (internal quotation marks omitted).

Importantly, however, an adult with such a duty "is not an insurer of the child's safety." *Kellermann,* 684 S.E.2d at 790. Instead, the adult may be held liable only if she does not "discharge his or her duties as a reasonably prudent person would under similar circumstances," or "with reasonable care." *Id.*

The court finds that St. Clair owed a duty to supervise A.S.C. with reasonable care under *Burns* and *Kellermann*. To be sure, as St. Clair notes, St. Clair had no students assigned to her in the gym. (Def.'s Mem. in Support at 10.) But, as A.S.C. notes, St. Clair's job description included responsibilities to "[e]nsure[] the adequate and *safe supervision* of students" and "provide . . . learning environment support." (Dkt. 84-4 at 2–3 (emphasis added).) This includes when St. Clair encountered students throughout the school. (St. Clair's Answers to Pl.'s Interrogatories at 3 (noting that St. Clair's responsibilities also included "monitor[ing] the hallways and bathrooms")).) Thus, St. Clair had a duty to supervise and care for A.S.C. with "reasonable care" when she encountered him in the gymnasium.

### B. Foreseeability

Next, the court examines whether A.S.C. created a jury question on whether R.S.'s act was foreseeable.

A defendant is not liable for an injury if it "is one that could not reasonably have been expected." *Holcombe v. NationsBanc Fin. Servs. Corp.*, 450 S.E.2d 158, 160 (Va. 1994). "Foreseeableness or reasonable anticipation of the consequences of an act is determinative of

defendant's negligence." *Id.* For an injury to be foreseeable, "[i]t is necessary not that the precise occurrence be foreseen, but only that a reasonably prudent person under similar circumstances ought to have anticipated that an injury might probably result from the negligent acts." *See Va. Elec. & Power Co. v. Savoy Const. Co.*, 294 S.E.2d 811, 818 (Va. 1982) (cleaned up).

Normally, reasonable foreseeability "is a matter for the fact finder." *Doe v. Virginia Wesleyan Coll.*, 90 Va. Cir. 345, 354 (2015) (citing *A.H. v. Rockingham Publishing Co.*, 495 S.E.2d 482, 486 (1998)). But "in certain cases the court can find as a matter of law that the facts are insufficient to raise a jury issue." *Id.* (citing *A.H.*, 495 S.E.2d at 486.) For example, "[i]n ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen." *A.H.*, 495 S.E.2d at 486.

For the violent acts of third persons to be foreseeable, a defendant must have knowledge of past violence that is sufficiently proximate to indicate that similar violence against the plaintiff might recur. *See id.* at 486. As an illustration, in *A.H. v. Rockingham Publishing Company*, a newspaper delivery boy was assaulted while delivering newspapers. *Id.* He sued a publishing company for failing to warn him of three prior assaults that had occurred over the past five years. *Id.* The Supreme Court of Virginia held that the defendant had no duty to warn the plaintiff, as "the then-known background of the three prior assaults [over five years]" was not "sufficient to create a reasonable foreseeability" that plaintiff would be assaulted by a third party. *Id.*

Here, the record shows that St. Clair had no knowledge of *any* prior violent or disruptive acts of R.S. (St. Clair's Answers to Pl.'s Interrogatories at 5–6 (stating "it was not

- 9 -

until after the Altercation that I became aware that the student whom [the administrator] pulled out of Mr. Richardson's classroom was R.S."); St. Clair Dep. at 28:13–15 (stating when she visited R.S.'s classroom for his behavioral problems, the teacher "didn't point out which student it was").)

A.S.C. fails to demonstrate otherwise. For example, A.S.C. argues that, a week prior, St. Clair had been at R.S.'s classroom "long enough . . . that R.S. would have been pointed out to her." (Pl.'s Resp. at 4.) But this is mere speculation, and "surviving summary judgment . . . requires evidence, not unsupported conjecture." *Graves v. Lioi*, 930 F.3d 307, 324 (4th Cir. 2019). A.S.C. also states "a strong argument can be made" that St. Clair "lacks credibility" when she testifies that she does not know R.S. (*Id.* at 15–16.) But "litigants can't avoid summary judgment by merely calling into question the credibility of witnesses testifying against them—they must introduce some affirmative evidence that creates a genuine factual dispute." *McMichael v. James Island Charter Sch.*, 840 F. App'x 723, 731 (4th Cir. 2020). A.S.C. did not provide or point to any such affirmative evidence.

Aside from speculation and conjecture, A.S.C. asserts that several facts create a triable issue that R.S.'s conduct was foreseeable. Specifically, A.S.C. points to (1) R.S.'s push of A.S.C. a few seconds before the punch, (Pl.'s Resp. at 16); (2) that St. Clair may have noticed that R.S. was much larger than A.S.C, (*id.* at 17);[3] (3) a "commotion" among students who were reacting to the altercation, (*id.*); and (4) that St. Clair took a half-step towards "what is *assumed*

---

[3] St. Clair asserts that she did not notice physical differences between the boys. (St. Clair Dep. at 38:20–39:4.) But at the motion for summary judgment stage, the court must draw all reasonable inferences in favor of the non-movant. It is reasonable to infer from the proffered video that St. Clair could have noticed physical differences between A.S.C. and R.S.

to be the closest gym exit but changes direction to *maybe* avoid getting any closer to . . . R.S. and the Plaintiff." (Pl.'s Resp. at 5 (emphasis added); *see also* Video at 00:33.)

But none of this evidence creates a factual dispute that St. Clair knew who R.S. was or should have foreseen R.S.'s violent act. R.S.'s punch "was not foreseeable based on [his push] because it differed in degree and kind from his earlier violence." *Sage v. United States*, 974 F. Supp. 851, 866 (E.D. Va. 1997). Nor is it a reasonable inference from the video that the "commotion" among the children was in reaction to R.S. and A.S.C.'s interaction (or that, if it was, this commotion made R.S.'s violence more foreseeable). And finally, it would be mere "speculation and the piling of inferences" to infer that St. Clair was heading towards the best exit but changed course to avoid R.S. and A.S.C. *Graves*, 930 F.3d at 324; (*see also* Pl.'s Resp. at 5 (emphasis added) (in which A.S.C. "assume[s]" St. Clair was walking to the most convenient exit but "maybe" changes directions to avoid R.S. and A.S.C.).)

For these reasons, A.S.C. did not create a jury question that this "act[] of assaultive criminal behavior by [a] third person[]," R.S., was a reasonably foreseeable consequence of St. Clair's actions or inactions. *A.H.*, 495 S.E.2d at 486.

### C. Breach

Next, the court examines whether a reasonable jury could find that St. Clair engaged in a "degree of egregious conduct" necessary for breach under gross negligence.

Under Virginia law, "[g]ross negligence is substantially and appreciably higher in magnitude than ordinary negligence." *Thomas v. Snow*, 174 S.E. 837, 839 (Va. 1934). In Virginia, "[g]ross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other

person.'" *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)).  It requires conduct "that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* (citation omitted).

Additionally, "[b]ecause 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id.* (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008)).  "Deliberate conduct"—that is, deliberately ignoring a danger of which one was aware—"is important evidence on the question of gross negligence." *Chapman v. City of Va. Beach*, 475 S.E.2d 798, 801 (1996) (in which a supervisor "made a deliberate decision not to order that [a] gate be repaired" despite receiving three separate reports about the broken gate); *see also Lutfi v. United States*, 527 F. App'x 236, 246 (4th Cir. 2013).

"Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury." *Elliott*, 791 S.E.2d at 732 (quoting *Frazier*, 362 S.E.2d. at 691).  But a court must enter judgment for the defendant "when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established." *Id.* (quoting *Frazier*, 362 S.E.2d. at 691).

St. Clair has pointed to evidence that her actions did not amount to "an utter disregard of prudence."  Specifically, St. Clair shows that after R.S. pushed A.S.C., she evaluated the situation and decided that her involvement was not needed.  (St. Clair Dep. at 28:13–18 ("And then when I looked over, they had already resolved it, resolved themselves, went back to

baseline. *That's what we were taught in Mandt Training.* There was nothing to de-escalate at that time, because they had already returned back to being in line.") (emphasis added).) This is enough for St. Clair to prevail, as "a claim for gross negligence must fail when the evidence shows that the defendant[] exercised some degree of care." *Elliott*, 791 S.E.2d at 732.

The burden shifts to A.S.C. to present evidence that St. Clair's reaction was an "egregious" breach of her duty. Attempting to do so, A.S.C. points to several "key facts," including: (1) the assertion that "Defendant took the job because she was pregnant and the schedule worked for her"; (2) St. Clair's deposition statement that "for a woman that was pregnant, [my role] was a dream. I could be off my feet"; (3) A.S.C.'s assertion that St. Clair had "at minimum some knowledge about R.S. prior to the incident with the Plaintiff"; (4) St. Clair's salary of $50,000; (5) various facts that can be inferred from the video, including that St. Clair was looking at the boys during the initial push; and (6) the responsibilities of St. Clair's job and the trainings she received. (Pl.'s Resp. at 18.)

Even viewing these facts in the light most favorable to A.S.C., none of them create a jury question that St. Clair's conduct was in "utter disregard of prudence." *Elliott*, 791 S.E.2d at 732. Some of these "facts" (such as the notion that St. Clair's pregnancy made her inclined to shirk her responsibilities) are mere speculation and one "inference upon another." *Othentec Ltd.*, 526 F.3d at 140. Other facts (such as St. Clair's salary) have no bearing on the egregiousness of St. Clair's actions. And finally, other facts (such as the fact that St. Clair was looking at A.S.C. and R.S. when the push occurred) raise no more than "metaphysical doubt" that St. Clair knew that R.S. would soon punch A.S.C. and thus ignored A.S.C.'s safety. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In [the Fourth]

Circuit, speculative assertions concerning the defendant's 'state of mind' or 'motivation' . . . will not suffice." *El Kassemy v. Telvista Inc.*, No. 4:08-cv-00018, 2009 WL 530571, at *5 (W.D. Va. Mar. 3, 2009), *aff'd*, 328 F. App'x 274 (4th Cir. 2009) (quoting *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988)).

Additionally, A.S.C. cannot show that St. Clair engaged in the "deliberate conduct" of ignoring a known danger—the hallmark of gross negligence. *Chapman*, 475 S.E.2d at 801; *see also Lutfi*, 527 F. App'x at 245–46. As previously discussed, A.S.C. cannot point to evidence that R.S.'s violence was reasonably foreseeable. Thus, "there is no evidence that [St. Clair] made a deliberate decision to ignore the [risk that A.S.C. would be assaulted by R.S.], nor is there any evidence that [St. Clair] consciously disregarded" that risk. *Lutfi*, 527 F. App'x at 245–46.

Perhaps St. Clair's decision not to act "might amount to ordinary negligence." *Id.* at 246. But, on the evidence adduced by A.S.C., no reasonable jury could find that St. Clair's conduct "amount[ed] to the sort of 'egregious conduct' or 'utter disregard of prudence' necessary to establish gross negligence." *Id.* A.S.C. simply cannot meet "Virginia's uniquely high standard for gross negligence claims." *Cantrell v. McCoy*, 553 F. Supp. 3d 295, 306 (W.D. Va. 2021).

### IV.   Conclusion

A.S.C. cannot create a genuine question that R.S.'s violence ought to have been foreseeable to St. Clair. Nor can he create a triable issue that St. Clair's conduct amounted to grossly negligent breach. For these reasons, the court will grant St. Clair's motion for summary judgment.

An appropriate Order will issue.

**ENTERED** this  8th  day of January, 2026.

                                                                                    HON. JASMINE H. YOON
                                                                                    UNITED STATES DISTRICT JUDGE